**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

| | |
|---|---|
| **MARIA DE LOS ANGELES TORRES,** :<br>  :<br>  Plaintiff,  :<br>  :<br>  - against -   :<br>  :<br> **THE UNITED STATES OF AMERICA,**   :<br>  :<br>  :<br>  Defendant.  : | **OPINION AND ORDER**<br><br>**09 Civ. 5092 (RLE)** |

---------------------------------------------------------------

**RONALD L. ELLIS, United States Magistrate Judge**:

## I. INTRODUCTION

Plaintiff Maria De Los Angeles Torres ("Torres"), filed a Complaint on June 1, 2009, seeking damages from Defendant United States Postal Services ("the Government"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674 (2006). Torres alleges that the Government is liable for the injuries she sustained from slipping and falling while in a United States Post Office located at 4165 White Plains Road, Bronx, New York ("Wakefield Station"). Specifically, she alleges the Government is chargeable with constructive notice of the dangerous condition that caused the accident. This case is before this Court as the parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pending before the Court is the Government's Motion for Summary Judgment. For the following reasons, the Motion is **DENIED**.

## II. BACKGROUND

**A. Plaintiff's Accident**

On June 1, 2007, at approximately 10:00 a.m., Torres and her mother, Maricelis Ramirez ("Ramirez"), entered the Wakefield Station to pick up three social security checks, two for themselves and one for another family member. (Mem. of Law in Supp. of Def. Mot. for Summ. J. ("Def. Memo") 3, June 24, 2010). There are two staircases in the foyer of the station which lead to the main customer service lobby area. Torres and Ramirez used the staircase to the right to make their way to the information window. (*Id*.) Torres obtained the checks and used the same staircase to leave the station. (*Id*.) Once outside of the station Torres realized that she had mistakenly obtained only two of the three checks. Torres and Ramirez re-entered the station to get the third check, again using the staircase on the right of the foyer. (*Id*. at 3–4). Torres spoke with two postal employees, who were able to locate the third check. Torres and Ramirez made their way down the same staircase while leaving the station.

Three or four steps down Torres's sandal got "stuck" on a substance on the staircase, which she believes to have been "either a melted Icee or melted rubbery candy." (*Id*. at 4). Torres fell and broke her right ankle. (*Id*. at 5). Torres and Ramirez did not notice the substance at any time prior to the fall. (*Id*.) The fall occurred at 10:40 a.m., approximately forty minutes after the first time Torres and Ramirez entered the station. (*Id*.) Once the accident occurred, Ramirez screamed for help and another costumer in the Station called an ambulance. (Dep. of Maria de Los Angeles Torres ("Torres Dep.") 154:10–12, June 24, 2010); Dep. of Maricelis Ramirez ("Ramirez Dep.") 96:23–24, June 24, 2010). Station manager Terry Pauls ("Pauls") and the custodian, Horace Nelson

2

("Nelson"), were summoned to the area. (Dep. of Horace Nelson ("Nelson Dep.") 34:4–22, June 24, 2010; Dep. of Terry Pauls ("Pauls Dep.") 38:6–22, June 24 2010). Pauls and Nelson did not recall seeing the substance after the accident. (Pauls Dep. 63:22, 64:10–14; Nelson Dep. 40:9–13.)

**B. Employees' Actions Prior to the Accident**

Horace Nelson is an employee of the United States Postal Service ("USPS") (Nelson Dep. 6:19–22.) On the day of the incident, he was stationed at the Wakefield Station on the 6:00 a.m. to 3:00 p.m. shift (Nelson Dep. 8:3–19; Pauls Dep. 12:4–5), and had arrived at work at approximately 6:00 a.m. At the start of each day, Nelson customarily cleaned and inspected the entire lobby area, which includes the foyer, two staircases, and the main customer service area ("the lobby area"), and he believes he followed this procedure on the day of the accident. (Nelson Dep., 19:2–26:22.) On that day, Nelson completed the initial cleaning of the area by 7:40 a.m., and inspected the area to ensure that it was dry and free of debris before the post office opened to customers at 8:00 a.m. (*Id.*)

Pauls is an employee of the USPS. (Pauls Dep. 6:2–10.) On the day of the incident, she was stationed at the Wakefield Station as a manager in charge of overseeing the station's daily operation. (*Id.* 7:25–8:10; Def. Mem. 2.) She began her shift at 7:00 a.m., and would customarily inspect the lobby area at that time to ensure that Nelson had completed his duties and that the area was clean and free of debris. (Def. Mem. 2–3.) Postal Service safety regulations required Pauls and Nelson to inspect the lobby area two to four times throughout their shifts to ensure the area was free of dangerous conditions. (Pauls Dep. 16:19–17:9.)

On the day of the incident, Terrence Dawson ("Dawson") was a custodian with the USPS and was stationed at the Wakefield Station on the 10:00 a.m. to 7:00 p.m. shift. (Pauls Dep. 12:6–7; Nelson Dep. 44:20.) Nelson was required to conduct a second inspection of the lobby area before Dawson's shift began. (Pauls Dep. 19:23–20:14.) As with Nelson, Dawson was supposed to inspect the lobby area at the start of his shift. (Pauls Dep. 35:22–24.)

The record does not show that additional inspections of the lobby area occurred subsequent to the initial cleaning at 7:40 a.m. Pauls did not inspect the area after the inspection at the beginning of her shift. (Pauls Dep. 19:18–22.) In describing his daily routine, Nelson does not mention conducting a second inspection of the lobby area. (*See* Nelson Dep. 26:22–31:17.) Pauls testified that she did not know whether Nelson had conducted a second inspection of the lobby area on the day of the accident. (Pauls Dep. 20:19–23; 23:10–14.) In fact, Nelson testified that he did not return to the area until he was summoned to the area because of Torres's accident. (Pl.'s Mem. In Opp. To Def. Mot. for Summ. J. ("Pl. Mem.") 2, Aug. 6, 2010.) Dawson was not deposed, and neither Pauls nor Nelson knew whether he had conducted an inspection of the area prior to Torres's accident. (Pauls Dep. 36:2–11; Nelson Dep. 46:16–47:2.)

### III. DISCUSSION

**A. Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Under this standard, summary judgment is proper if "viewing the record

4

in the light most favorable to the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v. LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir. 1989) (internal quotations omitted), *rev'd on other grounds*, 496 U.S. 633 (1990). In making this determination, the court does not resolve disputed factual issues, but reaches a conclusion as to whether there exists "a genuine and material issue for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1175 (2d Cir. 1993). An issue of fact is "genuine" if it provides a basis for "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate where no reasonable trier of fact could find in favor of the nonmoving party, *H. L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).

       The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568 (2d Cir. 1993) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party satisfies this initial burden, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[T]he mere existence of factual issues -- where those issues are not material to the

claims before the court -- will not suffice to defeat a motion for summary judgment." *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985). If the nonmoving party fails to respond by "affidavits or as otherwise provided in [Rule 56, and] set forth specific facts showing that there is a genuine issue for trial[,] . . . summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e).

### B. The Issue Before the Court

When evaluating a motion for summary judgment the evidence is viewed in the light most favorable to the nonmoving party. *Pension Benefit Guar. Corp.*, 875 F.2d at 1015. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Armao v. American Honda Motor Co.*, 917 F. Supp. 142, 143 (D. Conn. 1996). Torres states that the substance that caused her fall was "sticky," "already squashed," and "had dirt on it."(Torres Dep. 166:15–18.) Whether this substance caused her fall, was actually present, or if this is an accurate depiction of the substance, are issues reserved for determination by the fact finder after all the evidence has been presented. *See Armao*, 917 F. Supp. at 143. The issue before the Court in this motion is whether, on the record as it exists, the substance, if it existed, was on the floor for a sufficient length of time to charge the Government with constructive notice. (*See* Def. Memo 7.)

### C. Defendant's Constructive Notice

Under the FTCA, the law of the state where the cause of action occurred is the law that governs the claim. *See* 28 U.S.C. § 2674. New York negligence law therefore governs. To establish a prima facie case of negligence in New York, the plaintiff must

6

show (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty, and (3) the injury was proximately caused by that breach. *See Solomon v. New York City,* 66 N.Y.2d 1026, 1027 (1985).

Under New York common law, landlords or owners of a property, commercial or residential, have an obligation to maintain the common areas in a reasonably safe condition and have a duty to use reasonable care to inspect and repair common areas. *Williams v. Matrix Fin. Serv.*, 158 Fed. Appx. 301, 303 (2d Cir. 2005); *Wynn ex rel Wynn v. T.R.I.P Redevelopment Assocs.*, 296 A.D.2d 176, 181 (3d Dep't 2002). The adequacy and frequency of the owner's inspection is not for the Court to decide on summary judgment but is an inquiry reserved for after all the evidence has been presented. *See Touri v .Zhagui*, 2010 U.S. Dist. Lexis 20112 at *8 (S.D.N.Y. Mar. 5, 2010) ; *Wynn,* 296 A.D.2d at 181.

Before a plaintiff can recover damages, he or she must establish that the landowner created or had either actual or constructive notice of the hazardous condition that precipitated the injury. *Dinunzio v. Ken-Ji Elec. Contractors Inc.*, 473 F. Supp. 2d 485, 488 (S.D.N.Y. (2007). "To constitute constructive notice a defect must be visible and apparent and exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Benware v. Big V Supermarkets Inc.*, 177 A.D.2d 846, 847 (3d Dep't 1991) (*quoting Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837( 1986)). A landowner is chargeable with constructive notice of a dangerous condition that a reasonable inspection would have discovered. *St. Paul Fire & Marine Ins. Co v. T.A.G 380 L.L.C.*, 2007 U.S. Lexis 74112 (S.D.N.Y. Sept. 27, 2007); *Wynn,* 296 A.D.2d at 181.

### D. The Defendant May be Charged with Constructive Notice as It Had a Duty of Reasonable Inspection

The Government had a duty to perform reasonable inspections of the area where the accident occurred. (Pauls 16:19; 19:2–22:22.) At the beginning of every shift, the cleaners, specifically Nelson, cleaned and inspected the lobby area. (Nelson Dep. 21:7–11.) Subsequent to the initial cleaning in the morning, the cleaners were required to inspect the area again two to four times throughout their shift. (Pauls Dep. 16:19–25.) Additionally, the supervisors, including Pauls, were required to conduct an inspection of the area immediately after the initial cleaning and again two to four times per shift. (*Id.* 17:5–9.)

There is no evidence in the record to indicate that Nelson conducted a second inspection of the area on the date of the accident. When asked if she had actual knowledge of a second inspection by Nelson on that date, Pauls responded "I cannot recall" and "[t]he knowledge that I have is [of ] everyday routine." (*Id.* 20:15–25; 23:10–14.) In Nelson's description of his daily routine, which could be inferred as his actions the day of the accident, he does not mention conducting a second inspection of the area before 11:00 a.m. (Nelson Dep. 26:2–31:17.) Pauls did not conduct any of the required subsequent inspections on the date of the accident. (Pauls Dep. 19:18–22.)

The record also indicates there was another cleaner, Dawson, required to clean and inspect the area prior to the accident. Dawson was responsible for cleaning and inspecting the lobby area at the beginning of his shift at 10:00 a.m., forty minutes before the accident occurred. (Pauls Dep. 35:22–24; Nelson Dep. 44 20–24.) Dawson was never deposed and the record does not indicate that he conducted an inspection of the area prior to the accident. (*See* Pauls Dep. 35:5; Nelson Dep. 46:20–25.)

8

Three hours and forty minutes passed between the initial cleaning of the lobby area and the time of the accident (*See* Def. Mem. 2, 4–5), and a two hours passed from the time the Post Office opened to the time of the accident. (*Id*. at 2.) Within that timeframe the Government was required to conduct at least one inspection of the lobby area. A reasonable fact-finder could find the area was not inspected prior to the accident. A reasonable fact-finder could also infer the dangerous condition was discoverable had the Government's employees conducted the required inspections of the area. Interpreting the evidence in the light most favorable to Torres, the Government could be charged with constructive notice of a dangerous condition that a reasonable inspection would have discovered. Prior to a complete presentation of the evidence, the Court finds that the Government has not established as a matter of law that it did not have constructive notice of the dangerous condition. Accordingly, the Government's Motion for Summary Judgment is **DENIED**.

**E. Defendant's Contention**

Absent direct proof, courts generally look at the condition of the substance as circumstantial evidence that the substance was present for a sufficient length of time to charge the owner with constructive notice. *See Taylor ex rel Taylor v. N.Y.C. Transit Auth.*, 48 N.Y.2d 903, 904 (1979); *Gordon* 67 N.Y.2d at 838. Viewing the evidence in the light most favorable to the nonmoving party, Torres's depiction of the substance as "sticky," "already squashed," and with "dirt on it," will be used to determine if the Government may be charged with constructive notice. (Torres Dep. 166:13–18.)

The Government points to several cases where the plaintiffs' descriptions of the substance alone were not sufficient to establish the defendants' constructive notice. The

Court finds those cases are distinguishable from the one at bar because, in those cases the plaintiff's description of the substance was the only evidence used to establish the length of time the dangerous condition existed. *See, e.g.*, *Pirillio Longwood Assocs.*, 179 A.D.2d 744, 745 (2d Dep't 1992) (a can of soda was initially upright in the lobby when the plaintiff entered. Less than an hour later he slipped on the soda. The facts established the soda was not present on the floor for long enough to charge the defendant with constructive notice); *Cuddy v. Waldbaum Inc.*, 230 A.D.2d 703, 704 (2d Dep't 1996) (finding that the plaintiff left the store without reporting the incident, there was no evidence of when the incident occurred, and the only evidence was the plaintiff's description of the substance); *Berg v. Wegmans Food Mkts. Inc.*, 242 A.D.2d 861 (4th Dep't 1997) ( finding plaintiff's description of substance without more was not enough to establish constructive notice); *Robinson v. Walt-Mart Stores*, 37 F. Supp. 2d 605, 607 (W.D.N.Y. 1999) *aff'd*, 242 F.3d 367 (2d Cir. 2000) (finding plaintiff did not present any evidence the defendant knew or should have known the liquid was on the floor. The plaintiff's description alone was not sufficient to establish the substance was present long enough to charge constructive notice); *Bykofsky v. Waldbaums Supermkts Inc.*, 210 A.D.2d 280, 281 (finding the plaintiff's description alone was not enough and there was an "absence of evidentiary facts from which a jury could infer constructive notice from the amount of time the dangerous condition existed"); *Batiancela v. Staten Island Mall*, 189 A.D.2d 743,743–44 (2d Dep't 1993) ("[t]he mere existence of ice cream on the floor of the mall without further evidence as to the length of time the ice cream was present does not constitute evidence of constructive notice"); *Baxter v. Jackson Terrace Assocs.*, 43 A.D.3d 968, 969 (2d Dep't 2007) (finding the only evidence presented was

10

the plaintiff's description of the substance, which was not enough to survive summary judgment); *Koser v. Supermarkets Gen. Corp.*, 244 A.D.2d 320, 321 (finding "there [were] no evidentiary facts from which a jury could infer constructive notice. Any finding that the fruit or sweet potato had been on the floor for any appreciable period of time would be mere speculation").

Unlike the plaintiffs in the cases described above, Torres produced supplementary evidence to supplement her own description of the substance. Here, the Government was required to conduct regular, reasonable inspection of the area where the accident took place. The area was not inspected for almost three hours prior to the accident. Torres's description of the substance combined with evidence the area was not inspected for a number of hours is enough to survive the Government's motion for summary judgment. *See Negri v Stop & Shop Inc.*, 65 N.Y.2d 625,626 (1985) (finding there was evidence that the area was not cleaned or inspected for almost two hours prior to the accident, and that such circumstantial evidence was sufficient to permit the jury to draw the necessary inference that a slippery condition existed for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it).

## IV. CONCLUSION

For the reasons set forth above, the Government's Motion to Dismiss is **DENIED**.

The parties are ordered to appear for a Pretrial Conference on **January 6, 2011**, at 10:00 a.m., in Courtroom 18D, 500 Pearl Street.

**SO ORDERED** this 28th day of **December 2010**
**New York, New York**

_____
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

12